Gabe, Appellant, vs. Town of Lake, Respondent.

*November 11—December 6, 1955.*

For the appellant there was a brief and oral argument by *Vincent A. Schmit,* attorney, and *John A. Udovc* of counsel, both of Milwaukee.

For the respondent there was a brief by *Walter J. Mattison,* city attorney of Milwaukee, and *Peter M. Stupar,* assistant city attorney, and oral argument by *Mr. Stupar.*

CURRIE, J.   On this appeal counsel for the plaintiff Gabe maintain that he is entitled to recover from the town the damages claimed on the following two grounds:

(1) The town board acted in bad faith in abolishing Gabe's position of purchasing agent and account clerk; and

(2) The town board within two years after abolishing such position created a new position involving at least part of the same duties as the abolished position thereby entitling Gabe, under the provisions of the town civil-service ordinance,[1]

[1] Sec. 15 of the town civil-service ordinance provided as follows: Abolishment of Position. Whenever in the judgment of the town board it becomes necessary in the interest of economy or because the necessity for the position involved no longer exists, the town board may abolish any position or employment in the civil service. Any employee holding such an abolished position or employment may be dropped from the pay roll and civil service. Should such position or employment or *any position involving* all or *any of the same duties be* reinstated or *created within two years,* such employee shall be eligible to be appointed thereto in preference to any other qualified

to be appointed to such newly created position in preference to any other qualified persons on the eligible list for such newly created position.

In an annotation entitled "Power to abolish or discontinue office" appearing in 172 A. L. R. 1366, 1372, it is stated, "Tenure of office and civil-service laws cannot be evaded by a sham or pretended abolishment." Among the cases cited in such annotation in support of such rule is *State ex rel. Thein v. Milwaukee* (1938), 229 Wis. 12, 17, 281 N. W. 653, wherein this court stated:

"There is a rule that a new classification cannot be created by giving a new title to a position which involves the same duties as a position previously known by another title. But the reason for that rule is that such a change in name only with no change in duties indicates bad faith in creating the new position."

On behalf of Gabe it is contended that the facts in the instant case bring it within the application of the above-quoted rule, and that the express finding by the trial court that the "town board acted in good faith and was motivated by considerations of economy" in abolishing the position of purchasing agent, is contrary to the great weight and clear preponderance of the evidence. One of the grounds urged in support of such contention of bad faith is the claim that a new position was created having the same duties as that which was abolished. It is thus apparent that there is an overlapping of the evidence bearing on the two issues raised on the appeal. Because of this we will review the pertinent facts brought out in the evidence that bear on both issues without attempting to segregate the same.

Gabe testified that on the average only half of the time which he spent in the performance of his position as pur-

persons on the eligible list for such position, and such employee shall also be eligible for certification to any other appropriate position. (Emphasis supplied.)

chasing agent and account clerk was devoted to acting as purchasing agent. He was only clothed with authority to directly purchase items costing less than $5 each. As to an item costing in excess of such amount, he would type out a purchase order covering the same at the request of some town department head, or employee in such department having authority to make such a request. Then Gabe would sign such purchase order and present it to the town board. If the town board approved of the proposed purchase, the same was not made by Gabe but by someone in the department who had requested the purchase. After the purchase had been made and the invoice for the same received, Gabe would check the invoice against the purchase order before payment therefor was made.

During the other half of Gabe's hours of employment, when he was not engaged in such work as purchasing agent, he rendered assistance to the town assessor, clerk, treasurer, and engineer. These duties of his were not very well defined but consisted of rendering assistance to such four town officers whenever they requested it and he had the free time available. Sometimes such assistance took the form of clerical work and on other occasions these activities took him outside the town hall. Among such outside duties were investigating claims filed against the town and obtaining the signatures of property owners to various easements sought by the town. One clerical duty which Gabe handled with consistent regularity was the issuance of street permits granting authority to dig up or obstruct highways in order to lay sewer, water, and gas mains and laterals.

In 1940, one Elmer Belter entered the employ of the town, and, after the adoption in 1941 of the town civil-service ordinance, he obtained civil-service status under the classification of "utility laborer" attached to the town highway department. The duties of such position were outside labor. From time to time he was temporarily transferred from the

highway department to the town hall to do clerical work. However, for the last year and a half prior to March 30, 1950, Belter worked continuously in the town hall doing clerical work for the town assessor, treasurer, and clerk. An example of the kind of work he did was to type out the tax statements for the town treasurer, and Belter was able to type forty of these per hour. During the time Belter was working at typing such tax statements, he worked steadily at it while Gabe would only occasionally help out with such typing of tax statements.

There was received in evidence a letter bearing date of March 20, 1950, from the town civil service commission to the town board reading as follows:

"The deadline for filing application for the promotional examination for tax-account clerk has expired, with only Mr. Elmer Belter filing application for the position.

"The commission has therefore voted to recommend to the town board that Mr. Belter be permanently appointed to the position as provided in rule XVI, section 9 of the Civil-Service Rules and Regulations.

"Will you please notify us of your action in this matter."

Such letter was presented by the town clerk to the town board at a meeting of the board held March 30, 1950, and the board at such meeting unanimously adopted a resolution appointing Belter to the position of "tax-account clerk." Belter has continued to fill such position since such appointment, the duties of which were the same as he had previously been performing for the year and a half preceding March 30, 1950, with the exception of later assuming the duties Gabe had performed with respect to the town purchase orders as hereinafter will be more particularly related.

It is Gabe's contention that such appointment of Belter made on March 30, 1950, was a preliminary step in a plan engineered by one Ollman, a member of the town board, to abolish Gabe's position because of ill-will which Ollman bore

toward Gabe. Gabe testified that an altercation had taken place earlier in March between Ollman and himself in which Ollman angrily grabbed Gabe by the shirt and accused him of playing politics in supporting a certain candidate for town office in the impending town election. Gabe further testified that he denied to Ollman the truth of such accusation and that Ollman then stated, "After this is all over you are not going to be purchasing agent." Ollman in his testimony categorically denied that any such altercation had taken place or that he had made such threat. However, Ollman did admit on the witness stand that he did anticipate the abolition of Gabe's position at the time the board created the position of tax-account clerk.

The town election was held April 4, 1950, and Ollman was the only one of the three members of the town board returned to office. On April 24, 1950, a meeting was held of the town board, which then consisted of the two newly elected members together with Ollman. There was read into evidence the following extracts of the minutes of such meeting:

" 'Supervisor Karthausser moved to abolish the position of town purchasing agent as set up in the civil-service ordinance *for economy reasons;* also that the town clerk be directed to handle this work.' 'Motion seconded by Supervisor Ollman and carried unanimously.' " (Emphasis supplied.)

Pursuant to such action taken at the April 24, 1950, meeting, the employment of Gabe terminated on May 15, 1950. The town board then designated the town clerk to perform the work Gabe had been doing with respect to the purchasing orders. Shortly thereafter, the town clerk presented a communication to the board in which he stated that the clerk's office could not take on such additional duties. Thereupon the board, under date of May 22, 1950, directed that Belter perform the same, which Belter did. Belter testified that his work in preparing the purchase orders and performing the

other duties Gabe had done as purchasing agent consumed but sixteen to eighteen hours of each eighty-hour pay-roll period.

The minutes of the meetings of the town board fail to disclose that any ordinance was ever adopted amending the town civil-service ordinance so as to provide for the new job classification of "tax-account clerk" and the town clerk was unable to produce any such amending ordinance although commanded to do so by subpoena *duces tecum*. The clerk in office in 1950 did, however, produce the following letter to himself from the town attorney:

"Pursuant to direction by the town board, I have drafted and inclosed herein original with affidavit of posting attached, and three copies for posting, of the ordinance amending ordinance No. 314 [the original civil-service ordinance] by creating thereunder the position of 'tax-account clerk.'

"Kindly bring this to the attention of the town board at an early meeting thereof. I am sending a copy of said ordinance to each member of the town board and to Mr. Lathrop, the secretary of the civil service commission."

Whatever became of the copies of such proposed amending ordinance, which are referred to in the foregoing letter as having been forwarded to various town officials, is an unsolved mystery. Because of the presumption of regularity which attaches to the official minutes of the town-board proceedings, we must assume for the purpose of this appeal that the draft of such proposed amending ordinance prepared by the town attorney was never adopted by the town board.

In addition to abolishing Gabe's position, other economy measures undertaken by the town board elected at the April 4, 1950, election were: The reduction in the amount of the town treasurer's bond from $200,000 to $75,000, resulting in the saving of $600 in premium; the refusal of wage increases requested in behalf of certain town employees; and the denial of the request of the town highway department to

hire 10 new employees although later in the season this department was authorized to hire five new employees. The reason which prompted such economy measures was a reduction in the utility-tax revenues of the town.

On the basis of the foregoing analysis of the pertinent evidence in the case, this court cannot hold that the learned trial court's finding of fact, that the town board in abolishing Gabe's position "acted in good faith and was motivated by considerations of economy," is against the great weight and clear preponderance of the evidence. As the learned trial court pointed out, even if Ollman were actuated by malice toward Gabe in creating the new position for Belter and then abolishing Gabe's position, there is absolutely no evidence of any collusion between the old board which created Belter's position and the new board which abolished that of Gabe's.

We now turn to the second issue raised as to whether the town violated that provision of its civil-service ordinance, which required that Gabe be eligible to the appointment to any position created within two years after his own position had been abolished "in preference to any other qualified persons on the eligible list for such [newly created] position." There is a complete absence of any proof in the record that the town did create any such new position after Gabe's own position was abolished by action taken by the town board at its meeting of April 24, 1950. Those parts of Gabe's duties relating to the preparation, presentation, and auditing of the town's purchase orders, were turned over to Belter after that date. This, however, did not create a new position in the sense of setting up a new civil-service job classification requiring the town civil service commission to certify eligible applicants therefor.

There is very serious doubt as to whether the appointment of Belter to the newly created position of tax-account clerk on March 30, 1950, was legal. This is because the town board failed by ordinance to amend the existing town civil-service

ordinance so as to create such new job classification of tax-account clerk. However, even if Belter were illegally appointed to such position of tax-account clerk, he was a *de facto* incumbent of such position and drawing the salary thereof. Because of this, plaintiff cannot recover as damages in this action the amount of any salary, which the town paid to Belter after May 22, 1950 (the date when the town board directed him to perform the duties Gabe had performed as purchasing agent), on the theory that Belter was illegally holding the position of tax-account clerk and that in reality a new position was created by the town board's action of May 22, 1950, to which position Gabe had the preferential right. The applicable rule of law is stated in 67 C. J. S., Officers, p. 360, sec. 99 b, as follows:

"When a *de facto* officer or public employee is in possession of an office or position, discharging its duties under color of right, a person claiming to be a *de jure* officer or employee, entitled to possession of the office, cannot maintain an action against the state or other governmental body for the emoluments of the office without first establishing his right to the office by direct proceedings."

In other words, in this action, Gabe cannot collaterally attack the appointment of Belter to the position of tax-account clerk on March 30, 1950. The situation would be different in this respect if Gabe had been able in the trial court to substantiate his charge of bad faith and establish that the appointment of Belter to such new position on March 30, 1950, was part of a plot to get rid of Gabe and then transfer his duties over to Belter. Having failed to prove bad faith, the possible illegality of Belter's original appointment, which preceded the abolishing of Gabe's own position, has no materialty on this appeal.

*By the Court.*—Judgment affirmed.